# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

NUVASIVE, INC., )
a Delaware Corporation, )
     )
         Plaintiff, )
     )
         v. ) C.A. No. 2017-0720-SG
     )
PATRICK MILES, an individual )
ALPHATEC HOLDINGS, INC., )
a Delaware Corporation. )
     )
         Defendants. )
     )

## MEMORANDUM OPINION

Date Submitted: April 16, 2024
Date Decided: August 16, 2024

Ethan H. Townsend, Aaron P. Sayers, MCDERMOTT WILL & EMERY LLP, Wilmington, Delaware; OF COUNSEL: Rachel B. Cowen, MCDERMOTT WILL & EMERY LLP, Chicago, Illinois; Morris J. Fodeman, WILSON SONSINI GOODRICH & ROSATI, New York, New York; Jeffery S. Hood, PROCOPIO, CORY, HARGREAVES & SAVITCH LLP, San Diego, CA; *Attorneys for Plaintiff.*

Philip A. Rovner, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: Nimalka Wickramasekera, WINSTON & STRAWN LLP, Los Angeles, California, Brian J. Nisbet, Elizabeth S. Deshaies, WINSTON & STRAWN LLP, Chicago, Illinois, John C. Sanders, Jr., WINSTON & STRAWN LLP, Dallas, Texas; *Attorneys for Defendants.*

**GLASSCOCK, Vice Chancellor**

This matter involves a suit by a medical-device company, NuVasive, Inc. ("NuVasive" or the "Company") against a former executive and director, Patrick Miles, and Defendant Alphatec Holdings, Inc. ("Holdings"), the parent of Miles' current employer. The complaint alleges legal causes of action against Holdings.[1] It also maintains a single cause of action against Miles,[2] for breach of fiduciary duty.

The case against Miles and Holdings was tried. I have determined that the most efficient way to approach the matter is to resolve the breach of duty claim against Miles, then let the parties inform me what issues remain. During his time at NuVasive, Miles made an investment in Holdings, which intended to compete with NuVasive. Plaintiff has clarified that it does not allege that the investment itself was a breach of duty. It argues, however, that in failing to disclose the investment to his employer, Miles breached a duty of loyalty owed to NuVasive. That is the only breach of duty claim before me, therefore.[3] That limited issue is the subject of this brief memorandum opinion.

I find under the circumstances here, as disclosed at trial, that the failure to disclose did not amount to bad faith or otherwise demonstrate a breach of the duty of loyalty.

---

[1] Plaintiff has sued Holding's subsidiary, Alphatec Spine, Inc. on similar grounds in California.
[2] A second cause of action against Miles for tortious interference with contract has been dropped by the Plaintiff. Pre-Trial Stipulation and [Proposed] Order ¶¶ 1–2, Dkt. No. 484.
[3] *Id.*; Tr. of 4-16-2024 Post-Trial Oral Arg. 12:11–21:21, Dkt. No. 522. ("Post Trial Oral Arg.").

1

# I. BACKGROUND[4]

## A. Factual Background

### 1. The Parties

NuVasive is a medical device company incorporated in Delaware, with its principal place of business in San Diego, California.[5] NuVasive develops technologies to treat spinal disease.[6]

Holdings is a holding company incorporated in Delaware that owns the stock of its subsidiaries.[7] Holdings via its subsidiaries is a direct competitor of NuVasive, as they also develop technologies to treat spinal disease.[8]

Miles is the current President and Chief Executive Officer of non-party Alphatec Spine, Inc. ("Spine"), one of Holdings' subsidiaries.[9] Miles is also the President and Chairman of Holdings.[10] Miles formerly held an executive position and was a member of the Board of Directors of NuVasive.[11]

---

[4] This Letter Opinion only contains facts necessary to my analysis. Citations to the parties' joint trial exhibits are referred to by the numbers provided by the parties and cited as "JX __". *See* Parties' Joint Ex. List, Dkt. No. 484. Citations to the parties' stipulated pre-trial order are cited as "PTO ¶ __". Pre-Trial Stipulation and [Proposed] Order, Dkt. No. 484. References to the trial transcripts are cited as "Tr. __:__". 10-2-2023 Trial Tr.—Volume I, Dkt. No. 496; 10-3-2023 Trial Tr.—Volume II, Dkt. No. 497; 10-4-2023 Trial Tr.—Volume III, Dkt. No. 498; 10-5-2023 Trial Tr.—Volume IV, Dkt. No. 499; 10-6-2023 Trial Tr.—Volume V, Dkt. No. 500.
[5] PTO ¶ 6.
[6] Tr. (Malone) 16:20–30:10.
[7] PTO ¶ 7.
[8] JX441–JX444.
[9] PTO ¶ 8.
[10] *Id.*
[11] JX42.

### 2. Miles' Responsibilities at NuVasive and Involvement with Holdings & Spine

Before joining Holdings and Spine, Miles worked for NuVasive for approximately 17 years.[12] Miles was crucially involved with NuVasive's product development and commercial strategy while employed at the Company.[13] Eventually, Miles began serving as NuVasive's President and Chief Operating Officer in 2016.[14]

During his employment at NuVasive, in January 2016, the Company considered an opportunity to acquire Spine, which was on the verge of bankruptcy.[15] At the direction of Greg Lucier, NuVasive's Chief Executive Officer, NuVasive's executives, including Miles, reviewed, commented, and participated in a meeting with Spine and its financial team regarding a potential purchase of Spine.[16] Miles advised against NuVasive pursuing an acquisition of Spine.[17] Despite Miles' position that acquiring Spine was not advantageous to NuVasive, Miles stated, in a text message to a former NuVasive sales executive, Terry Rich, "Tell your buddy to put $'s behind [Spine] so we can run at that."[18] Ultimately, in February 2016,

---

[12] PTO ¶ 9.
[13] Tr. (Miles) 111:24–112:9.
[14] JX420.
[15] JX11.
[16] JX6–JX12; JX395; JX482.
[17] JX11; JX12.
[18] JX3 at 16.

NuVasive's management unanimously agreed that Spine would not be a good acquisition.[19]

The next month in March 2016, Miles was approached by a third-party investor group that was interested in his involvement to invest in and potentially run Spine, if Holdings accepted the group's investment proposal.[20] Miles was courted by the third-party investor group for several months with the idea that Miles would eventually serve as Spine's CEO.[21] Holdings did not accept the third-party investor group's proposal, however, and Miles did not pursue the opportunity further.[22]

In the meantime, on August 1, 2016, NuVasive appointed Miles to its Board of Directors and sent Miles to a leadership program.[23] The leadership program was a CEO "charm school," in which Miles was expected to learn skills to make a successful CEO.[24] Miles completed the leadership program, but NuVasive was not satisfied with Miles' performance.[25] Eventually, as relations became tense between Miles and NuVasive's leadership, particularly with Lucier, and with no signs of upward movement within the Company, Miles tendered his resignation on September 7, 2016 to pursue an opportunity as Spine's CEO.[26] At the time, Craig

---

[19] Tr. (Miles) 415:10–433:24; JX7–JX12; JX1153.
[20] Tr. (Miles) 434:7–459:13; Tr. (Hunsaker) 869:4–873:6.
[21] Tr. (Miles) 434:7–459:13; JX16.
[22] Tr. (Hunsaker) 872:9–873:6.
[23] Tr. (Miles) 461:14–464:20.
[24] *Id.*
[25] *Id.*
[26] *Id.* at 466:10–467:9; JX40.

Hunsaker, a longtime friend of Miles and former NuVasive employee, was joining Spine, making the opportunity attractive to Miles.[27]

In response to Miles' intention to resign, NuVasive offered Miles a lucrative executive compensation package to remain at the Company, which Miles accepted.[28] The offer letter (the "Offer Letter") from NuVasive stated that that Miles would "have an ongoing fiduciary duty to NuVasive" that precluded him from "knowingly engag[ing] in any activity that compromises the interests of NuVasive."[29]

### 3. NuVasive's Code of Ethical Business Conduct

NuVasive has a Code of Ethical Business Conduct (the "Code").[30] The Code has a "Conflicts of Interest" section which details "Financial Investments in Other Companies."[31] This section states that "[t]o be sure we are keeping NuVasive's best interests at heart, we should not have a *significant* investment in a customer, supplier or competitor."[32] It further states that "an investment in one of these companies is *significant* if it gives you some decision-making power."[33]

---

[27] JX710.
[28] Tr. (Miles) 467:16–469:6; JX48; JX513.
[29] JX47.
[30] JX1093.
[31] *Id.* at 3278.
[32] *Id.* (emphasis added).
[33] *Id.* (emphasis added).

### 4. Miles' Investment in Holdings

In early 2017, Holdings sought more capital through a private placement (or "PIPE" offering) in which the company raised approximately $18.9 million by selling (i) 1,809,628 shares of common stock, (ii) 15,245 shares of preferred stock (convertible into 7,622,372 shares of common stock), and (iii) warrants to buy up to 9,432,000 more shares of common stock.[34] During this time, Rich, who was now serving as Holdings' CEO, contacted Miles to discuss a potential investment in Holdings.[35] Holdings created presentation materials for potential investors, which described Holdings' business plan and indicated that it expected to compete with NuVasive by offering similar products.[36] In addition, an original version of the materials depicted a picture of Rich standing over a dead cheetah, NuVasive's mascot.[37] The materials made it obvious that Holdings expected to directly compete with NuVasive in the market. Miles has maintained that he did not review these materials.[38]

On March 22, 2017, Miles (through his entity MOM, LLC) made a $500,000 investment in Holdings stock.[39] Miles (through MOM, LLC) received 56,501 shares

---

[34] PTO ¶ 10.
[35] Tr. (Miles) 166:17–167:10.
[36] JX73 at 15, 29.
[37] JX69 at 39; Tr. (Malone) 30:22–31:5. The photo was only removed after Holdings' independent investment banker suggested it was inappropriate. JX70.
[38] Tr. (Miles) 168:23–174:6, 470:15.
[39] PTO ¶ 11.

of common stock, 386.99 shares of preferred stock, and 250,000 warrants for his investment.[40] At trial, Miles stated he made the investment because he felt guilty that he turned his back on his friends at Spine by reneging on Spine's offer of employment, and accepting NuVasive's counteroffer.[41] Miles did not disclose his investment in Holdings to NuVasive. The reasoning behind his lack of disclosure was due to the appearance of the investment and to avoid further conflict with NuVasive's management.[42] For his investment, however, Miles received no operational control or input; the investment was purely passive.[43] Five months after his investment in Holdings, Miles resigned from NuVasive on October 1, 2017, to become Executive Chairman at Holdings and Spine.[44]

## B. Procedural History

NuVasive brought an action against Miles on October 10, 2017[45] and filed an Amended Complaint on June 28, 2018, adding Holdings and Spine as named Defendants.[46] Miles filed a Motion for Partial Summary Judgment on March 6, 2018 asserting that California law should govern his employment agreement[47] and I

---

[40] *Id.* ¶ 12.
[41] Tr. (Miles) 472:12–23.
[42] *Id.* at 478:18–479:14.
[43] *Id.* at 470:22–471:22, 473:13–475:18, 476:13–477:15.
[44] PTO ¶ 13; Tr. (Miles) 495:5–500:20, 503:10–505:17; JX543; *see* JX858.
[45] Verified Compl. For Breach of Fiduciary Duty, Dkt. No. 1.
[46] Pl. NuVasive, Inc. First Am. Compl. for Damages, Dkt. No. 105 ("Am. Compl.").
[47] Def.'s Mot. for Partial Summ. J., Dkt. No. 36.

denied that Motion on September 28, 2018.[48]  On February 6, 2019, Miles filed a Renewed Motion for Summary Judgment.[49]  I granted that Motion in part in a Bench Ruling on June 7, 2019[50] and a Memorandum Opinion on August 26, 2019.[51]  On November 19, 2019, Holdings filed a Motion to Dismiss[52] and I granted and denied that Motion in part in a Memorandum Opinion on August 31, 2020.[53]  I held trial in this matter on October 2, 2023 through October 6, 2023.[54]  I heard post-trial oral argument on April 16, 2024, and took the matter under advisement that same day.[55]

This Memorandum Opinion addresses solely the pending claim for Breach of Fiduciary Duty of Loyalty against Defendant.

## II. ANALYSIS

The question before me is whether failure on the part of a fiduciary to disclose a passive investment in a company that intends to compete with the entity to which he owes duties, under the circumstances here, is a breach of the fiduciary duty of loyalty.  NuVasive seeks relief in the form of disgorgement of all salary, equity awards, investment gains, and other compensation received by Miles, post-

---

[48] *NuVasive, Inc. v. Miles*, 2018 WL 4677607 (Del. Ch. Sept. 28, 2018).
[49] Def. Patrick Miles' Renewed Mot. for Partial Summ. J., Dkt. No. 179.
[50] Judicial Action Form, Dkt. No. 201.
[51] *Nuvasive, Inc. v. Miles*, 2019 WL 4010814, (Del. Ch. Aug. 26, 2019).
[52] Def. Alphatec Hldgs., Inc.'s Mot. to Dismiss Pl.'s Second Am. Compl., Dkt. No. 245.
[53] *NuVasive, Inc. v. Miles*, 2020 WL 5106554 (Del. Ch. Aug. 31, 2020).
[54] Trial before Vice Chancellor Sam Glasscock beginning 10.2.23 and concluding on 10.6.23, Dkt No. 495.
[55] Post Trial Oral Arg. before Vice Chancellor Sam Glasscock dated 4.16.24, Dkt. No. 521 ("Post Trial Oral Arg.").

investment.[56]  NuVasive has the burden of demonstrating by the preponderance of the evidence that Miles breached his duty of loyalty.[57]

### A. Miles Failure to Disclose a Passive Investment in Holdings Does Not Constitute a Breach of Fiduciary Duty of Loyalty Under These Facts

Directors and officers of Delaware corporations owe a fiduciary duty of utmost loyalty.[58]  In that vein, it is noteworthy what the Plaintiff is *not* alleging here. It is not alleging that the mere passive investment by Miles in Holdings is itself a breach of the duty of loyalty.   NuVasive has a policy on when investments by fiduciaries are prohibited, as discussed below; NuVasive does not allege that Miles investment violates that policy.  Importantly, a material investment in a competitor could lead a fiduciary to act in his own self-interest arising from the investment, contrary to the interests of his employer; such actions would amount to a classic breach of the duty of loyalty.   No such actions are alleged here.

A plaintiff can plead a claim for breach of the duty of loyalty by alleging facts demonstrating that the fiduciary failed to pursue the best interests of the corporation and its stockholders and therefore failed to act in good faith.[59]  The duty of loyalty mandates that the best interest of the corporation and its shareholders takes

---

[56] Second Am. Compl. Prayer for Relief ¶¶ A–D, Dkt. No. 234. Because of my decision here, I need not address the remedy.  I note that the requested relief seems poorly aligned with the breach alleged, however.

[57] *Martin v. Med-Dev Corp.*, 2015 WL 6472597, at *10 (Del. Ch. Oct. 27, 2015).

[58] *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

[59] *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 33 (Del. Ch. 2014) (citing *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 53 (Del. 2006)).

9

precedence over any interest possessed by a director, officer, or controlling shareholder and not shared by the stockholders generally.[60] Thus, a failure to act in good faith may be shown, for instance, where the fiduciary acts intentionally with a purpose other than that of advancing the best interests of the corporation.[61]

NuVasive asserts that Miles breached his duty of loyalty when he failed to disclose his $500,000 investment through Holdings' PIPE, since Holdings intended to compete with NuVasive.[62] It contends that Miles hid his investment in Holdings from NuVasive, thereby violating his fiduciary duty to NuVasive.[63] Miles asserts that pursuant to NuVasive's Code his investment was permissible, because he obtained no control or decision-making authority with the competing entity in exchange for his investment.[64] Miles further contends that he did not "hide" his investment from NuVasive since he was not under an obligation to disclose the investment.[65] At issue is not best practices for corporate executives or directors, but whether the failure to disclose, itself, was sufficiently opposed to the interests of NuVasive so as to constitute bad faith. Under the facts established at trial, I find that Miles did not act in bad faith.

---

[60] *Id*. (citing *Cede & Co. v. Technicolor, Inc*., 634 A.2d 345, 361 (Del. 1993), decision modified on reargument, 636 A.2d 956 (Del. 1994)).
[61] *Id.* (citing *Disney,* 906 A.2d at 67); *accord Stone,* 911 A.2d at 369.
[62] Plaintiff NuVasive, Inc.'s Opening Post-Trial Br. 60–63, Dkt. No. 516 ("Pl.'s PT OB").
[63] Pl.'s PT OB 61.
[64] Defendants' Post-Trial Br. 17–21, Dkt. No. 514 ("Defs.' PT OB").
[65] Defs.' PT OB 22.

It was clarified at post-trial oral argument that the breach of fiduciary duty claim was limited to failure to disclose a passive investment.[66] I do not find that the failure to disclose the investment is a breach of a fiduciary duty of loyalty. I note that Holdings' investor materials made it clear that it intended to compete with NuVasive. That fact alone, coupled with a passive investment, does not demonstrate bad faith. This is because there is no evidence that, in his capacity as a NuVasive officer or director, Miles failed to advance the best interests of NuVasive and its stockholders. Additionally, the trial record does not show that Miles took any action on which any implied conflict of interest could bear. Finally, the investment was purely passive; Miles held no decision-making role at Holdings, and thus could not have used a position resulting from his investment to cause Holdings to compete against NuVasive. The investment did not give Miles operational input or control over Holdings.

The agency issue of a fiduciary holding an interest in a competitor is manifest. If Miles had been presented with an opportunity to cause NuVasive to take an action that would have resulted in a benefit to Holdings and Miles, presumably entire fairness review would obtain.[67] Likewise, if Miles had been given an opportunity

---

[66] Post Trial Oral Arg. 12:11–21:21. NuVasive initially asserted that the act of investing in a competitor business was a breach of a fiduciary duty of loyalty. *See* Pl.'s PT OB 60–61.

[67] *See In re BGC P'rs, Inc. Deriv. Litig.*, 2019 WL 4745121, at *1 (Del. Ch. Sept. 30, 2019) (denying motion to dismiss and applying entire fairness where conflicted director who held a larger economic interest in a target company than the acquirer company and was alleged to have influenced the acquirer to overpay for its acquisition of the target company).

11

by NuVasive to indulge a hidden conflict, which opportunity he would not have been given had he disclosed that conflict, a finding of breach of duty might obtain.[68] Again, nothing of the kind is present in the record here. There was simply no transaction, or contemplated transaction, in which Miles experienced a conflict of interest.[69]

Three factual scenarios require further comment. Miles testified as to the reason he invested in Holdings.[70] Miles stated he made the investment because he felt guilty for not supporting his friend and former colleague, Hunsaker, at Spine, who was joining Spine with the intent to turn around its trajectory and profitability.[71] Miles' guilt stemmed from reneging on Spine's offer that he join the company as its CEO, and accepting NuVasive's counteroffer to remain at NuVasive.[72] In particular, Miles expressed that he holds "people and friends in high esteem,"[73] and Miles felt a personal obligation to "help [his] buddy," and did not make an investment as a

---

[68] *See Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1153 (Del. Ch. 1994), *aff'd*, 663 A.2d 1156 (Del. 1995) (holding a financial interest in a target company is material when the "interested director fails to disclose his interest in the transaction to the board and a reasonable board member would have regarded the existence of the material interest as a significant fact in the evaluation of the proposed transaction.") (emphasis omitted).

[69] *See id*; *See also in re Oracle Corp. Deriv. Litig.,* 2023 WL 3408772 (Del. Ch. May 12, 2023) (holding a breach of fiduciary duty did not exist where the conflicted director disclosed a financial interest in a target company and withdrew from a presentation wherein the company considered the acquisition of the target company).

[70] Tr. (Miles) 472:12–23.

[71] *Id.*; *Id.* at 174:11–14.

[72] *Id.* at 472:12–23.

[73] *Id.*

vehicle to creating wealth.[74]  I find this testimony convincing, and not consistent with bad faith.

Second, Miles testified that he did not disclose the investment in Holdings because he wanted to avoid conflict with NuVasive's management.  Specifically, Miles had a tense relationship with NuVasive's CEO, Lucier.  In particular, the pair were in conflict over their differing backgrounds; Miles had spent sixteen years in the spine industry compared to Lucier who had no experience in the spine or surgical industry,[75] leading to conflicting views between them.  For instance, Miles believed that Lucier was more invested in the transactional nature of NuVasive instead of focusing on the culture of the Company.[76]  The dislike of each man for the other was well-known at the Company, and is amply demonstrated in the record.[77] Consequently, Miles had no desire to engage personally with Lucier by informing him of the investment.[78]  Again, I find this testimony persuasive.  The failure to disclose in these circumstances, to my mind, falls short of bad faith.

Finally, Plaintiff points to Miles' recommendation against NuVasive acquiring Holdings, before his investment in Holdings, as evidence that the subsequent investment and failure to disclose must have been in bad faith.  The facts are as

---

[74] *Id.*
[75] *Id.* at 397:14–398:19.
[76] *Id.* at 489:8–16.
[77] *E.g., id.* at 431:19–432:6.
[78] *Id.* at 478:18–479:14.

follows: (1) NuVasive was approached with an opportunity to acquire Spine in January 2016;[79] (2) Lucier directed NuVasive's executive officers, including Miles, to evaluate the proposal;[80] (3) the executives and NuVasive's financial team met to discuss the potential proposal;[81] (4) Miles advised against acquiring Spine;[82] and (5) NuVasive's management unanimously agreed to decline to acquire Spine, in February 2016.[83] At this point in time, Miles had not yet invested in Holdings; that investment occurred in March 2017. I accept Miles' testimony, as set out above, that he invested out of a sense of obligation to a friend, and not to seize an opportunity from NuVasive. Holdings as constituted in January 2016 was not a successful concern.[84] I find Miles' recommendation against the acquisition by NuVasive was made in good faith, and not indicative that his subsequent investment was bad faith.

NuVasive relies on *Metro Storage International v. Harron*,[85] to support its assertion that Miles committed an actionable violation of a fiduciary duty by not disclosing his investment.[86] I do not find NuVasive's reliance on *Metro Storage International* persuasive. In *Metro Storage International,* an officer of an LLC

---

[79] JX11.
[80] JX6–JX12; JX395; JX482.
[81] JX6–JX12; JX395; JX482.
[82] JX11; JX12.
[83] Tr. (Miles) 415:10–433:24; JX7–JX12; JX1153.
[84] *See* JX1163; Tr. (Miles) 424:14–426:21; JX9.
[85] 275 A.3d 810 (Del. Ch. 2022).
[86] Pl.'s PT OB 60.

14

entered an employment agreement that provided that the officer would have six months to conclude any existing engagements before committing his time to the LLC.[87] The officer, however, continued to work for his previous client by providing the same services he gave to the LLC and disclosing the LLC's confidential information.[88] Throughout his employment with the LLC, the officer kept his work with his previous client a secret.[89] Ultimately, once the LLC became defunct the officer left, taking the LLC's confidential information.[90] The Court held in part that the officer's failure to disclose his concurrent engagements constituted a breach of his fiduciary duty of loyalty since the knowledge of the engagements were something the LLC "would wish to have" and an obligation of full disclosure was implicit *as the officer agreed to cease other engagements outside the LLC*.[91]

*Metro Storage International* relied on *Hollinger International v. Black*[92] and *Triton Construction Company v. Eastern Shore Electrical Services* for its determination.[93] In *Hollinger International*, the board chairman agreed to oversee the process for developing a value-maximizing transaction for the corporation, such as selling the corporation or its assets.[94] However, the chairman diverted to himself

---

[87] *Metro Storage Int'l,* 275 A.3d at 823.
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.* at 851 (quoting Restatement (Third) of Agency § 8.11 cmt. b).
[92] 844 A.2d 1022 (Del. Ch. 2004).
[93] 2009 WL 1387115 (Del. Ch. May 18, 2009).
[94] *Hollinger Int'l*, 844 A.2d at 1029.

a valuable opportunity presented to the corporation for the possible sale of its newspaper asset to a potential buyer.[95]  The chairman did not disclose the letters sent to the chairman by the buyer seeking to purchase the corporation's newspaper asset.[96]  The Court held in part that the chairman's failure to disclose his dealings with the buyer, when "full disclosure was obviously expected," was a violation of his fiduciary duty of loyalty.[97]  In *Triton Construction Company*, an employee of an electrical contracting company failed to disclose his simultaneous employment with a competitor of the electrical contracting company.[98]  The Court held in part that the employee was not a key employee, director, or officer, and thus, did not owe fiduciary duties to the company solely by virtue of his position.[99]  But he did owe certain duties, including the duty to disclose, because he was an agent of the company and had confidential information, which creates a relationship that is analogous in most respects to that of a fiduciary relationship.[100]

The circumstances present here differ from the facts presented in *Metro Storage International*, *Hollinger International*, and *Triton Construction Company*.  First, NuVasive has not shown that Miles dedicated time or resources toward Holdings during the time when he continued to work for the Plaintiff.  While the officer of the

---

[95] *Id*.
[96] *Id.* at 1061.
[97] *Id*.
[98] *Triton Const. Co.*, 2009 WL 1387115, at *1.
[99] *Id.* at **9–11.
[100] *Id.* at *11.

LLC in *Metro Storage International* dedicated time and resources to his previous client and the chairman in *Hollinger International* dedicated time and resources to diverting a corporate opportunity to himself, Miles held only held a passive investment in which he possessed no operational control or input.[101]

Second, NuVasive points to the Offer Letter, by which it retained Miles when he considered taking a position with Holdings, as imposing a duty to disclose similar to the employment agreement found actionable in *Metro Storage International*.[102] In particular, the Offer Letter stated: Miles would "have an ongoing fiduciary duty to NuVasive" that precluded him from "knowingly engag[ing] in any activity that compromises the interests of NuVasive."[103] The Offer Letter does not provide a divergent contractual standard of duty, however; it merely restates the common law fiduciary duty.

Third, the employment agreement in *Metro Storage International* and the diversion of a corporate opportunity in *Hollinger International* clearly indicate the need for full disclosure,[104] but Miles' investment in Holdings is not a circumstance

---

[101] Tr. (Miles) 470:22–471:22, 473:13–475:18, 476:13–477:15.

[102] Pl.'s PT OB 62. In addition, NuVasive has not pled a breach of contract claim in this proceeding. *See* PTO ¶¶ 1–2.

[103] JX45.

[104] *See Metro Storage Int'l*, 275 A.3d at 851; *Hollinger Int'l*, 844 A.2d at 1061. Plaintiff relies on a statement in *Metro Storage International,* which cites the Restatement (Third) of Agency § 8.11 cmt. b, that an agent breaches a duty by not giving his principal information that he knows the principal would wish to know. Pl.'s PT OB 60–63. Plaintiff points to the testimony of Miles that he did not want *Lucier* to be aware that he was investing in Holdings as invoking this principle.

where full disclosure was "obviously expected"[105] to prevent a breach of the duty of loyalty, since there was no transaction or circumstance in which Miles experienced a conflict of interest.[106]

Turning to NuVasive's Code, I find the Code created a standard under which Miles was obliged to eschew certain investments. However, the Code[107] limits these to "significant" investments. Per the Code, an investment is significant where the investor receives "decision-making power." Thus, under a reasonable reading of the Code, it is implicit that there is no obligation to eschew, or disclose, an investment where the investor does not receive decision-making authority. The Code itself, of course, does not eliminate an obligation to act in good faith where common-law fiduciary duty so requires,[108] but it is evidence here of lack of bad faith inhering in Miles actions.

NuVasive makes a final argument that relies on the importance of the investment Miles made to the success of Holdings; an argument I find unpersuasive. NuVasive

Pl.'s PT OB 15–16; Tr. (Miles) 176:14–19. Lucier, however, was not Miles' principal, but was another fiduciary of NuVasive. NuVasive was the principal; under the authority cited, for the duty to disclose to arise, the agent must know *the principal* would have an interest in disclosure. NuVasive would surely have an interest in knowing of a conflicted investment where the fiduciary was faced with acting or considering a transaction where that conflict could come to bear. The trial record did not reflect such a scenario, however.

[105] *Hollinger Int'l*, 844 A.2d at 1061.

[106] *See Technicolor, Inc.*, 663 A.2d at 1153. *See also in re Oracle Corp. Deriv. Litig.*, 2023 WL 3408772.

[107] JX1093.

[108] Plaintiff makes this point in its reply brief. *See* Plaintiff NuVasive, Inc.'s Post-Trial Reply Br. 2, Dkt. No. 519 ("Pl.'s PT RB").

asserts that Miles' investment, although only a small fraction of the funds that Holdings raised, was nonetheless significant to its operations, allowing it to compete with NuVasive.[109] But this is not an argument relating to the failure to disclose as a breach of duty—if anything, it is an argument that the investment itself was a breach of the duty of loyalty, a claim the Plaintiff has foregone. In any event, it was not demonstrated by the evidence that Miles' investment was critical or a substantial aid to Holdings' ability to compete with NuVasive.

## III. CONCLUSION

Failure by a fiduciary to disclose even a passive interest in a competitor is problematic, no doubt. If conflicted transactions follow, entire fairness may obtain. Failure to disclose such an investment is not *per se* a breach of the duty of loyalty, where no conflicted transaction or decision by the fiduciary, or other reason the entity would have an interest in disclosure, is present. For the foregoing reasons, I find that the Plaintiff has not demonstrated that Miles' failure to disclose his investment in Holdings breached his fiduciary duty of loyalty to NuVasive. The parties are directed to submit a form of order consistent with this Memorandum Opinion.

---

[109] Pl.'s PT RB 4.